# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2019 MAY -1  AM 9: 21

DEPUTY CLERK _____

TOBY KRISTOPHER PAYNE,        )
Prison ID # 1720023,          )
                              )
            Plaintiff,        )
                              )
v.                            )        No. 1:18-CV-0175-BL
                              )
FNU ALMANZA, et al.,          )
                              )
            Defendants.       )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U. S. C. § 1983, Plaintiff sues four named and other unknown prison officials

or employees of the French M. Robertson Unit of the Texas Department of Criminal Justice for

holding or placing him in Close Direct Observation ("CDO") under deplorable conditions in viola-

tion of the Americans with Disability Act ("ADA"); the Rehabilitation Act ("RA"); and the Eighth

Amendment of the United States Constitution. *See* Compl. (doc. 2) at 5-6. The Court has granted

Plaintiff permission to proceed with this case *in forma pauperis*. *See* PLRA Filing Fee Order (doc.

5). On November 1, 2018, the District Judge referred the case to the undersigned. *See* Order (doc.

6). Plaintiff thereafter consented to have a United States Magistrate Judge conduct any and all fur-

ther proceedings in this case, including entry of a final judgment, in accordance with 28 U.S.C. §

636(c). *See* Consent to Proceed Before a United States Magistrate Judge (doc. 10).

On April 8, 2019, the Court sent Plaintiff a Magistrate Judge's Questionnaire ("MJQ") to

flesh out the factual and legal bases for his claims. *See* MJQ (doc. 16). Plaintiff timely responded

to the MJQ. *See* Answers to MJQ (doc. 17).[1] After considering Plaintiff's complaint, his answers

to the MJQ, other relevant filings, and the applicable law, the Court issues this Memorandum

Opinion and Order finding that Plaintiff has stated no claim that survives summary dismissal and

thus dismisses this action in its entirety.

# I. BACKGROUND[2]

Shortly after 6:00 p.m. on July 14, 2018, Plaintiff was placed in CDO after he informed an

officer that he was suicidal and would ingest forty-plus pills that he "had saved up" if the officer did

not handcuff him. Answers 1 and 2(a). He alleges that, after confiscation of his medication, he was

escorted to CDO where he complied with an order to strip naked and was placed into Cell # 12 in

Building 12, F Wing. Compl. at 7-11. The moment he entered the cell he recognized the deplorable

conditions, including dried urine and feces and cold air blowing through an air vent into the cell.

*Id.* at 8-9. With respect to the deplorable conditions of Cell # 12, he alleges specifically:

> Upon entering the cell, I immediately noticed the foul smell of urine and feces. I also
> noticed that the cell floor was covered with fine particles of debris of unknown
> origin. The sink/toilet looked filthy all over. The toilet rim looked and smelled like
> dried urine. The sink had two spots the size of lima beans of dried feces. The inside
> of the cell door, which was two tall narrow windows comprised of diamond shaped
> steel that allows air to pass thru, had been retrofitted with plexiglass on the outside
> to cover the windows. This is to prevent anything being thrown on an officer.
> Various areas of the window had caked up food and dried feces caught between the
> diamond shaped steel and the plexiglass on the inside of the door.

*Id.* at 8 (some grammatical errors corrected).

---

[1] The answers to the MJQ constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). For ease of reference, the Court will cite to the answers as Answer 1, Answer 2, etc.

[2] The factual background is taken from Plaintiff's complaint and answers to the MJQ. When screening for failure to state a claim, the Court views Plaintiff's factual allegations in accordance with *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

Because the facility lacked sufficient blankets for all inmates housed in CDO, Plaintiff went without a suicide blanket from July 14, 2018, through just after 6:00 p.m. on July 17, 2018, although he asked about getting a blanket and felt like he was freezing. *Id.* at 9. When Plaintiff asked Major Almanza about a blanket, the Major simply indicated that there were too many inmates needing to be housed in CDO. *Id.*

While housed in CDO, Plaintiff had to choose between sleeping on a bunk that had residue from mace or a filthy floor. *Id.* at 10. In addition, during his confinement there, a neighboring inmate caused his cell to flood, which also caused water to come into Cell # 12 "eventually rising to about 1/4 inches deep" and requiring Plaintiff to walk in it. *Id.* at 10. When prison officials turned off the water in the neighboring cell, they also turned off Plaintiff's water thus causing him to be "served at least one meal" without water. *Id.* An officer – identified as Verimantes – told Plaintiff to use his spit when he asked for water during that meal. *Id.*; Answers 3 and 11. He had lunch without water and has "trouble remembering if [he] also ate the dinner meal without water." Answer 2(d). However, the water was only off for about two or three hours. Answer 2(c). Unidentified officers were allegedly deliberately indifferent to the water because they used mops and buckets to clean up the water outside the cell but refused to remove Plaintiff to clean his cell. Answer 3.

Plaintiff also complains about bright lights being on twenty-four hours a day and that he was not allowed to shower or brush his teeth while housed in CDO. Compl. at 11. Unidentified "picket officers" were deliberately indifferent to the lighting because they were responsible for the lights staying on. Answer 3.

At some point while Plaintiff was in the CDO, he "was moved to cell # 8 a few cells down,"

3

which "was also in a similar deplorable condition to cell # 12 right down to the mace residue on the bunk." Compl. at 11. Although Plaintiff does not recall specifically how long he was housed in CDO, *see* Answer 2(b), a prison grievance attached to his complaint shows that he was transferred to the Montford Unit on July 19, 2018, *see* Step 1 Offender Grievance Form. In addition, Plaintiff has provided supplemental exhibits showing that he was transferred the evening of July 19, 2018, and returned to the Robertson Unit on July 30, 2018. *See* Doc. 19.

The only physical injury sustained by Plaintiff from any of the alleged conditions of confinement was temporary, "burning sensations" from the mace residue when he rubbed his eyes soon after being placed in CDO. *See* Answers 5-9. However, Plaintiff stresses that he seeks punitive and nominal damages. *See* Answers 6-9. He also recently moved to amend his complaint to clarify that he only seeks nominal damages to be set by a jury and punitive damages of $2,000 per day for each day he was housed in the CDO. *See* Pl.'s Mot. Leave Amend Compl. (doc. 18). The Court has granted that motion contemporaneously with this Memorandum Opinion and Order.

Plaintiff commenced this civil action in October 2018. *See* Compl. He attached his Step 1 and 2 grievance forms to this complaint. He submitted the Step 1 grievance on August 1, 2018, and the allegations of this case essentially reiterate the allegations set forth in that grievance. *See* Step 1 Offender Grievance Form. Within that grievance, Plaintiff also explained that he sought to informally resolve his grievance by talking to Major Almanza and unspecified CDO officers between July 14 and 19, 2018. *See id.* He stated that, in response to his informal attempts to resolve the issues, the CDO officers "were indifferent" and Major Almanza simply stated: "There's too many of y'all." *Id.* Plaintiff also stated that his "grievable time period began on [July 19, 2018,]" which is the day he was transferred to the Montford Unit. *Id.*

On August 23, 2018, Assistant Warden Cano informed Plaintiff that his grievance had been investigated and reviewed. *See id.* He further stated:

> No evidence of staff misconduct was found to substantiate your allegations. An investigation has been completed by unit administration. Investigation indicates the CDO cells are cleaned after each offender is moved out, lights are left on to ensure offenders are not harming themselves, there is airflow in this housing, and blankets are only provided when doctor's orders are received. No further action warranted.

*See id.*

That same date, Plaintiff submitted his Step 2 grievance, wherein he stated that he was dissatisfied with the Step 1 response, because the response "is an outright lie and cover-up" and he stated that, after a response to his Step 2, he would file a federal law suit and identified five federal lawsuits to "verify his resolve." *See* Step 2 Offender Grievance Form. On September 27, 2018, he was notified in response to the Step 2 grievance: "Your grievance has been investigated. This issue was appropriately addressed at the Step 1 level. No evidence was found to support your allegations of the cell being dirty. Proper procedures were followed. No further action required." *See id.*

In his complaint, Plaintiff lists the following defendants: (1) Major Almanza, (2) Unknown CDO Correctional Officers, (3) Unknown Supervising Shift Sergeants, (4) Unknown Supervising Shift Lieutenants, (5) Unknown Supervising Shift Captains, (6) Assistant Warden Cano, (7) Assistant Warden Monte A. Griffin, and (8) Senior Warden Steven A. Sperry. Compl. at 5-6. Plaintiff asserts claims under the ADA, RA, and the Eighth Amendment under the same set of facts. *See* Compl. at 3; Answers 2 and 3. Based on his recent amendment, he only seeks nominal and punitive damages in this action. *See* Pl.'s Mot. Leave Amend Compl.

According to Plaintiff, Major Almanza had direct knowledge of all factual allegations set forth by Plaintiff and had a conversation with Plaintiff. Answer 10. The only Correctional Officer

that Plaintiff can identify is Verimantes. Answer 11. Other than Verimantes, Plaintiff alleges no acts or omissions of any unidentified Correctional Officer, Shift Sergeant, Supervising Shift Lieutenant, or Supervising Shift Captain. *See* Answers 11-14. He sues Assistant Warden Cano because he "is assigned overall responsibility of the safety and security of 12 Bldg." and he "signed the Step 1 grievance attached to the complaint." Answer 15. He sues Assistant Warden Monte A. Griffin and Warden Steven A. Sperry based on an assumption that all three wardens communicate with each other and they thus had knowledge of the conditions in CDO cells. Answers 16-17. When asked about identifying a specific policy or custom to support his suit against defendants in their official capacities, Plaintiff merely states that he "would only be able to provide additional facts via sworn affidavit or testimony by offenders and/or staff." Answer 18.

Given these facts and background information, the Court now conducts the preliminary screening of this action as contemplated by 28 U.S.C. §§ 1915(e)(2) and 1915A.

## II. SCREENING

Plaintiff proceeds with this case *in forma pauperis*. Therefore, this action is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B). In addition because he is a prisoner seeking redress from governmental entity or an officer or employee of such an entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A regardless of whether he proceeds *in forma pauperis*. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Both statutes provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court may find a claim frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law, furthermore, when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact, when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state a claim upon which relief may be granted, on the other hand, when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Iqbal*, 556 U.S. at 678 (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid summary dismissal. *Id.* at 570.

In this case, Plaintiff sues various defendants for alleged violations of the ADA, RA, and the Eighth Amendment.

## A. Eighth Amendment Claim

Plaintiff sues each defendant for alleged deplorable conditions endured while housed in the CDO. By his own admission, his CDO placement commenced at 6:00 p.m. on July 14, 2018, and ended with his transfer to a different prison facility the evening of July 19, 2018. He went without a blanket for three days. He went without water for two or three hours. During this approximate five-day period, he was moved from his initial cell assignment to another cell within the CDO area.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations and internal quotation marks omitted). As the Supreme Court has explained, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989); *accord Farmer*, 511 U.S. at 832. Depending on the facts of a given case, "housing in filthy, unsanitary cells . . . might violate the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Additionally, "sleep undoubtedly counts as one of life's basic needs" and "[c]onditions designed to prevent sleep . . . might violate the Eighth Amendment." *Id.*

Because the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency, against which [the courts] must evaluate penal measures," the Supreme Court has "held repugnant to the Eighth Amendment punishments which are incompatible

with the evolving standards of decency that mark the progress of a maturing society or which involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations and internal quotation marks and punctuation omitted). The well-established deliberate indifference standard set out in *Estelle* provides the proper analytical framework for claims alleging "inhumane conditions of confinement" by convicted inmates. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

Prison officials violate "the Eighth Amendment only when two requirements are met." *Farmer*, 511 U.S. at 834. The courts consider (1) whether the alleged deprivation is "objectively, 'sufficiently serious'" such that the act or omission results "in the denial of 'the minimal civilized measure of life's necessities'" and (2) whether the official had a "sufficiently culpable state of mind" in acting or failing to act. *Id.* In other words, there must be an "objective exposure to a substantial risk of serious harm" and "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Both of these inquiries are fact intensive. *Garrett v. Thaler*, 560 F. App'x 375, 380 n.3 (5th Cir. 2014) (per curiam). And the courts "have the usual authority" to determine which inquiry to address first and, if there is a failure on that element, there is no need to address the second element. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Courts "need not reach the subjective component" of an alleged Eighth Amendment violation when asserted claims do "not objectively demonstrate a sufficiently extreme deprivation." *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

### 1. **Objective Component**

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting

*Estelle*, 429 U.S. at 103).

> It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36.

For conditions-of-confinement claims, the Eighth Amendment requires "extreme deprivations," because "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The alleged conditions must expose the inmate to "an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35. The Fifth Circuit "has worded the test" for an alleged Eighth Amendment violation "as requiring extreme deprivation of any 'minimal civilized measure of life's necessities.'" *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (quoting *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998)).

Conditions of confinement, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities," and may thus qualify as "cruel and unusual under the contemporary standard of decency" applied in Eighth Amendment cases. *Rhodes*, 452 U.S. at 347. On the flip side, however, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* Some conditions may be "restrictive and even harsh," but unless they can be said to be cruel and unusual, they are no more than part of the sentence of imprisonment imposed for violating the law. *Id.*

Furthermore, while "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone," such combined effects are permissible

"only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304. In other words, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

Additionally, the "Supreme Court has noted that 'the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.'" *Gates*, 376 F.3d at 333 (quoting *Hutto v. Finney*, 437 U.S. 678, 686 (1978)). For example, a "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto*, 437 U.S. at 686-87. "Following this guidance, the circuit courts have uniformly held that certain conditions are not cruel and unusual if the inmate is subjected to the condition for only a short amount of time." *Powers v. Clay*, No. CA V-11-051, 2012 WL 6858233, at *7 (S.D. Tex. Nov. 21, 2012) (recommendation of Mag. J.), *subsequently aff'd*, 560 F. App'x 290 (5th Cir. 2014) (per curiam). Naturally, "there is no exact time calculation, and with certain conditions, or combinations of conditions, the short duration of the exposure does not eliminate the violation." *Id.* The duration of exposure is simply one part of the equation which also requires the courts to consider the equally important factor of "the degree of filth endured." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quoting *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994)). Stated differently, "the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases." *Id.* (same)

Plaintiff's allegations suggest deprivations of various human needs: warmth, sleep, water, hygiene, and sanitation. His warmth deprivation is allegedly caused by the combination of cold air

blowing through a vent and lack of a blanket. He alleges that these conditions led to sleep deprivation. And while he does not allege sleep deprivation from the twenty-four hour lighting in his cells, that is the only apparent suggested connection to any human need. The deprivation of water relates to when prison officials turned off his water for two to three hours in response to a fellow inmate flooding a nearby cell. His alleged hygiene deprivation is due to an inability to shower or brush his teeth while in CDO and his sanitation claim is based upon alleged urine, feces, mace residue, and wading through water.

Plaintiff's alleged water deprivation fails to objectively state a sufficiently extreme deprivation. His water was turned off for only two to three hours. He ate one meal without water while speculating that he may have eaten a second without water. The duration of the water outage does not support the speculation. And even if it did, eating two meals without water does not objectively demonstrate an extreme deprivation sufficient to state a claim under the Eighth Amendment.

Likewise, Plaintiff provides insufficient factual allegations to find an objectively extreme deprivation of warmth. He alleges a lack of blanket for three days coupled with ventilation blowing cold air for an unspecified duration. While he states that he felt like he was freezing, he provides no factual basis for finding that, during July in Texas, this was any more than discomfort resulting from air conditioning ventilation and a lack of blanket for three days. While "[e]xtreme cell temperatures . . . can violate the Eighth Amendment," the objective component requires "'an unreasonable risk of serious damage' to a prisoner's health." *Ball*, 792 F.3d at 592 (quoting *Helling*, 509 U.S. at 35). When the temperature in a prisoner's cell is merely "uncomfortable," it does not violate the Constitution. *Id.*; *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Conclusory claims of extreme temperature and issues with ventilation, "without more, fail to implicate a federal right."

*Walker v. Collier*, No. 6:17-CV-166, 2019 WL 1421152, at *6 (E.D. Tex. Mar. 28, 2019). Vague and conclusory allegations of exposure to cold temperatures fail "to state a claim of a sufficiently serious deprivation that denied the minimal civilized measure of life's necessities." *Clark v. Gusman*, No. CIV.A. 11-2673, 2012 WL 1825306, at *6 (E.D. La. Mar. 29, 2012) (recommendation of Mag. J.) *adopted by* 2012 WL 1825302 (E.D. La. May 18, 2012). Based on Plaintiff's vague and conclusory allegations regarding the alleged deprivation of warmth, the Court finds insufficient factual allegations to support finding an objectively extreme deprivation.

As alleged by Plaintiff, the cool temperatures would make it more difficult to sleep, but there is no allegation that the ventilation was designed to deprive CDO occupants of sleep. Ventilation is in place to provide warmth when needed, coolness when needed, and a flow of air through cells. Likewise, twenty-four lighting is permissible to observe inmates that have threatened suicide thereby resulting in their placement in segregation. Under these circumstances, constant lighting appears necessary to observe the inmates so that they do not harm themselves. Furthermore, a "policy of constant illumination" may be "reasonably related to the legitimate penological interest of guard security." *Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004). Based on Plaintiff's allegations, including the brief duration of the conditions leading to his alleged sleep deprivation (three days without a blanket, a vent blowing cold air in his first cell placement, and continuous illumination in both cells for approximately five days), the Court finds no objectively extreme deprivation that poses an unreasonable risk of serious injury to Plaintiff's health.

Based on his allegations, Plaintiff could not shower while in CDO. He was housed there for four full days (July 15, 16, 17, 18) plus the evening of July 14 and all but the evening of July 19. "Courts have generally held that a temporary deprivation of the opportunity to shower does not vio-

13

late the Eighth Amendment." *Fernandez v. Armstrong*, No. 3:02-CV-2252-CFD, 2005 WL 733664, at *6 (D. Conn. Mar. 30, 2005) (listing cases involving deprivations from five days to two weeks). The Fifth Circuit has specifically held that denying showers for a three-day period violates no constitutional right. *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996). As an objective matter, "limiting inmates to weekly showers does not violate the Eighth Amendment." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Furthermore, a need for showering can be greatly reduced or eliminated when an inmate can clean himself by using the sink in his cell. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). On the facts alleged by Plaintiff, his denial of showers does "not amount to a denial of life's basic necessities," and such claim is subject to dismissal. *See Howard v. Guterrez*, No. CA C-11-125, 2011 WL 2223768, at *6 (S.D. Tex. June 7, 2011); *Fernandez*, 2005 WL 733664, at *6 (granting summary judgment on a claim based on an inability to "shower for approximately five days").

Plaintiff also claims that he could not brush his teeth while in CDO. The Court properly considers this claim in combination with the deprivation of showers because they affect a single human need – hygiene. Nevertheless, even when the Court considers the factual allegations jointly they fail to state an objectively extreme deprivation. The deprivation was relatively brief. Plaintiff had access to a sink with water, except for a two to three hour period around lunch time on one day. Other courts have found no objectively extreme deprivation based on brief inabilities to brush his teeth coupled with an inability to shower. *See Jordan v. Peters*, No. 95 C 4163, 2000 WL 149256, *4 (N.D. Ill. Feb. 8, 2000) (holding that occasional inability to brush teeth is "not severe enough to rise to the level of a constitutional violation" and recognizing other cases finding no objective extreme deprivation); *Young v. Scully*, No. 91-CIV- 4332 (JSM), 1993 WL 88144, at *5 (S.D.N.Y. Mar. 22,

1993) (finding de minimis deprivations lasting "only for a period of several days" do not rise "to the level of extreme deprivation); *Lock v. Clark*, No. S90-327 (RDP), 1992 WL 559660, at *9 (N.D. Ind. Mar. 17, 1992) (holding that seven days without hygienic items or showers failed to satisfy objective component). The Court finds no objectively extreme deprivation to Plaintiff's health by his brief inability to shower or brush his teeth while in CDO.

Similarly, the Court finds that Plaintiff's allegation regarding a need to walk through water that rose to 1/4th inch for an unspecified amount of time does not objectively demonstrate any extreme deprivation. While water on the cell floor may relate to how sanitary a cell may be it is sufficiently unrelated to the alleged feces, urine, and mace residue to be considered separately. Plaintiff makes no allegation to find any mutually enforcing effect between the water on the floor and the other alleged sanitation problems. And the water condition was eliminated – at the latest – once Plaintiff was moved to the second cell within CDO. Plaintiff simply provides insufficient factual allegations to find the water on the floor to be an objectively extreme deprivation.

Regarding the other alleged sanitation problems, Plaintiff describes fairly disgusting and specific conditions of his initial cell assignment but resorts to vague and non-specific allegations about his second cell. Plaintiff's generic statement that the second cell "was also in a similar deplorable condition," Compl. at 11, simply fails to provide an adequate factual basis to find an objectively extreme deprivation of sanitation. Furthermore, even though Plaintiff does not allege specifically how long he was housed in the first cell, the Court does not find that the alleged sanitation conditions rise to the level of an objectively extreme deprivation even if he was housed there for the full time that he was in CDO. Plaintiff makes no allegation that he asked for and was refused cleaning products or a means to clean his cells. Even without cleaning products, the alleged

lima-bean-sized feces in the sink seems easily cleaned and disposed of in the toilet. When the Court considers the relative brief exposure duration to the alleged sanitation problems and the level of squalor alleged by Plaintiff it cannot find an objectively extreme deprivation to Plaintiff's health. The conditions alleged by Plaintiff simply do not rise to a level needed for a constitutional violation.

For all of these reasons, Plaintiff's factual allegations fail to state an objectively extreme deprivation of any of life's basic necessities. Consequently, he has failed to state an Eighth Amendment claim upon which relief can be granted. Because the Court has not found any objectively extreme deprivation, there is no need to address the subjective component required for finding an Eighth Amendment violation. Courts may "appropriately dismiss claims for not involving a serious deprivation" before "reaching the state-of-mind issue." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). Nevertheless, given his sparse alleged facts, the Court also considers the subjective component.

## 2. **Subjective Component**

Prison officials are deliberately indifferent only when they know of the substantial risk of serious harm faced by the inmate and "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Deliberate indifference is an extremely high standard to meet." *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017). Notably, a "long duration of a cruel prison condition may make it easier to *establish* knowledge and hence some form of intent," but the duration of a given condition does not eliminate the intent requirement. *Wilson v. Seiter*, 501 U.S. 294, 301 (1991).

"Deliberate indifference will often be a fact-laden question" which makes it difficult for the courts "to draw bright lines in such an inquiry." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457

16

(5th Cir. 1994). The wantonness of a prison official's conduct does not depend "upon its effect upon the prisoner." *Wilson*, 501 U.S. at 303. Instead, "assuming the conduct is harmful enough to satisfy the objective component of an Eighth Amendment claim, whether it can be characterized as 'wanton' depends upon the constraints facing the *official*." *Id.* (citation omitted). In cases alleging unconstitutional prison conditions, the relevant "state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03); *accord Ball v. LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015).

Courts look at the circumstances as a whole when considering whether a prison official knows of a substantial risk of serious harm and responded with deliberate indifference. As alleged in this case, Plaintiff identifies three wardens and two other defendants who had knowledge of one or more of the alleged deplorable conditions. According to Plaintiff, Officer Verimantes knew of his complaint regarding eating a meal without water and told him to use his spit. Given the limited nature of Plaintiff's complaint to Officer Verimantes, the Court cannot find that he knew of a substantial risk of serious harm to Plaintiff and responded with deliberate indifference. A lack of water with a meal or two poses no substantial risk of serious harm. While the officer certainly was indifferent to the fact that Plaintiff had to eat a meal without water while the water was turned off for two to three hours, this momentary indifference simply does not rise to the level sufficient to find an Eighth Amendment violation.

With respect to the three wardens named as defendants, Plaintiff infers knowledge of the alleged deplorable conditions and deliberate indifference. He infers the requisite knowledge by Assistant Warden Cano based upon the August 23, 2018 response given to the Step 1 grievance filed on August 1, 2018. However, at the time of the grievance filing, Plaintiff had already been released

from the CDO on July 19, 2018, for transfer to a different facility and had in fact already returned to the Robertson Unit. The information provided in the grievance provides no plausible basis for an Eighth Amendment claim against any defendant.

Plaintiff infers that the other two wardens had the requisite knowledge based upon an assumption that all three wardens communicate with each other regarding the conditions of the CDO cells. This assumption provides no basis to find that any warden had knowledge of the alleged conditions of the CDO cells and responded with deliberate indifference.

While Plaintiff states that he had a conversation with Major Almanza that allegedly provided the Major with direct knowledge of all of his factual allegations, he provides scant details of this conversation. Based upon the Major's alleged sole response, i.e., his comment that there were simply too many inmates in CDO to provide blankets for each one, it is clear that the Major knew of the need for a blanket. But Plaintiff does not allege that he asked for cleaning supplies or that his cell be cleaned. He does not allege that he informed the Major of his issues with the water, the vent, or the lights. The Court finds Plaintiff's allegations conclusory as to what the Major knew of the alleged conditions of confinement in CDO. Conclusory allegations are insufficient to state a claim.

Furthermore, notwithstanding the failure to adequately allege knowledge on the Major's part, Plaintiff's allegations also fall short with respect to the Major or any other defendant responding with deliberate indifference. Even if the Court assumes that Plaintiff's allegations against the Major suffice to adequately allege that Major Almanza knew of alleged deplorable conditions and that those conditions qualify as a substantial risk of serious harm, Plaintiff's factual allegations fail to provide a plausible basis for claiming that the Major was deliberately indifferent to Plaintiff's complaints regarding the conditions of this confinement. His allegations simply fail to satisfy the extremely high

standard for deliberate indifference.

It is uncertain whether the conversation with the Major occurred while Plaintiff was housed in his initial CDO cell assignment or whether it occurred before, during, or after the water issues. In any event, if the conversation occurred while Plaintiff was housed in his first CDO cell, he was ultimately transferred to a different cell, and if the conversation occurred after that transfer, Plaintiff was soon transferred to a different facility altogether. Furthermore, at some point following the conversation, Plaintiff received a blanket. These actions do not exhibit deliberate indifference to a substantial risk of serious harm.

Based on the allegations of this case, Plaintiff has not sufficiently alleged that any defendant had the requisite knowledge of the alleged conditions of confinement and the Court cannot find on the facts alleged that any defendant acted with deliberate indifference. Without sufficient factual allegations regarding the subjective component, Plaintiff's Eighth Amendment claims fail to state a claim upon which relief can be granted.

**B. ADA and RA Claims**

Based on the same facts as his Eighth Amendment claim, Plaintiff asserts ADA and RA claims. While Plaintiff does not identify the specific provisions of these acts, it appears that he alleges violations under Title II of the ADA and section 504 of the Rehabilitation Act.

"The ADA 'forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodation (Title III).'" *Jefferson v. Loftin*, No. 3:04-CV-1102, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005) (accepting recommendation of Mag. J.) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). In pertinent part, Title II provides that "no qualified individual with a disability shall, by

19

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, as codified in 29 U.S.C. § 794(a), Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." In general, Title II "tracks the language of Section 504" and, by enacting Title II, Congress intended to "extend the protections of the Rehabilitation Act to cover all programs of state or local governments, regardless of the receipt of federal financial assistance and that it work in the same manner as Section 504." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citation and internal quotation marks omitted). Furthermore, "[j]urisprudence interpreting either section is applicable to both." *Id.* Notably, the "RA incorporates the ADA definition of disability by reference." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.10 (5th Cir. 2015) (citing 29 U.S.C. § 705(20)(B)). Thus, if a prisoner is disabled under one statute, he or she is "disabled under both statutes." *Id.*

"Title II of the ADA unambiguously extends to state prison inmates." *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). And while coverage under the RA is limited by the requirement of federal financial assistance, the two provisions are essentially coextensive. Nevertheless, neither provision provides for relief against any individual. *See Coker v. Dallas Cnty. Jail*, No. 3:05-CV-005-M-BH, 2009 WL 1953038, at *16 n.11 (N.D. Tex. Feb. 25, 2009) (recommendation of Mag. J. citing 42 U.S.C. § 12131), *accepted as modified by* 2009 WL 1953037 (N.D. Tex. July 6, 2009); *Meredith v. Nowak*, No. 06-2384, 2008 WL 4808905, at *4 (E.D. La. Oct. 31, 2008). They only "provide for relief against public entities." *Coker*, 2009 WL 1953038, at *16 n.11.

To state a claim under either Title II or Section 504, Plaintiff must allege that he "(1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the [prison], or was otherwise subjected to discrimination, (3) because of his disability." *Wright v. Tex. Dep't of Crim. J.*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *2 (N.D. Tex. Dec. 16, 2013). Plaintiff has not alleged that he is a qualified individual with a disability, and even if the Court were to assume he satisfies that first element, his ADA and RA claims fail because he not alleged any exclusion or discrimination because of his disability. When a plaintiff "has failed to allege that he was discriminated against on the basis of disability in a major area of public life," he fails to state a plausible claim upon which relief can be granted under the ADA. *Jefferson*, 2005 WL 4541891, at *6. The same reasoning applies when the plaintiff asserts claims under the RA.

### III. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). In this instance, the Court provided Plaintiff an opportunity to factually support his claims through his answers to the court questionnaire. Contemporaneously with this Memorandum Opinion and Order, it has also permitted Plaintiff to modify his requested relief. Accordingly, the Court finds that Plaintiff has pled his best case and that there is no basis to permit any further amendment.

## IV. CONCLUSION

After considering Plaintiff's complaint, his answers to the Court's questionnaire, other relevant filings, and the applicable law, the Court **DISMISSES** this action pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for Plaintiff's failure to state a claim upon which relief may be granted. This dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[3]

**IT IS SO ORDERED this** /st **day of May, 2019.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**

---

[3]Section 1915(g) is often referred to as the "three-strikes" provision and provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.